Dein Estate.

Argued March 1, 1948. Before RHODES, P. J., HIRT, ROSS, ARNOLD and FINE, JJ. (RENO and DITHRICH, JJ., absent).

*Ira B. Rutherford,* for appellant.

*Milford J. Meyer,* with him *M. J. Martin* and *Meyer, Lasch, Hankin & Poul,* for appellee.

OPINION BY ARNOLD, J., April 13, 1948:

The orphans' court refused to surcharge an executor for the amount of additional attorney's fees and addi-

tional state and federal inheritance tax penalties. One of the heirs appealed.

The decedent was president of the Honesdale National Bank and by his last will appointed that bank and his daughter, Mrs. Hazel M. Lewis, executors.

The heirs believed that Lewis A. Howell, trust officer of the bank, and Edward A. Katz, a director, each owed one-third of a note signed by the decedent alone in the sum of $22,000, payable to another bank. They also believed that one-third of certain securities, purchased from the proceeds of that note, belonged to the decedent. It is claimed that the trust officer and the bank were uncoöperative and denied liability.[1]

The bank as executor filed a first and partial account in which Mrs. Lewis did not join. The heirs employed an attorney and some progress was made looking toward a settlement of the Howell-Katz matter. Following an understanding with the attorney for the heirs, the executors' attorney petitioned the court to withhold final confirmation of the partial account, as there might be other assets. This order was made.

The parties, through their attorneys, worked out a settlement, and Howell and Katz paid to the estate $14,666.66, and turned over to the executors various securities.

If the bank as executor was derelict in not moving toward obtaining these assets, the heirs had various possible remedies: (a) To remove the bank as executor. (b) To deprive it of executor's commissions and expenses. (c) To surcharge the bank-executor $3000.00, being the fee of the heirs' attorney incurred to accomplish that which the bank-executor failed to do. (d) To surcharge the bank for any additional costs, tax penalties, losses or expenses occasioned by the failure of the bank-executor to act promptly.

---

[1] In the agreement executed and hereinafter referred to, these individuals did not admit liability.

Instead of pursuing any of these remedies, a written agreement was executed in which all of the heirs were parties of the first part; the bank as executor and individually was party of the second part; and Howell and Katz were the third parties.[2] Each of these three groups was represented by a different attorney, and the written agreement was their joint product.

In the preamble the agreement recites: "And whereas party of the second part has filed with the Register of Wills . . . a First and Partial Account . . . [in] said Estate and is prepared to file a Second and Final Account . . . and to request confirmation . . . and to make distribution . . . ; And whereas . . . [the heirs] claim . . . that by virtue of certain alleged stock and business transactions among the said decedent and . . . [Howell and Katz] the latter are indebted to the Estate and further claim that said Estate is entitled to certain . . . securities of [Howell and Katz] . . ., and further claim that . . . the [bank-executor] should heretofore have prosecuted said claims by legal action or otherwise against . . . [Howell and Katz]; And whereas . . . [the heirs] are prepared to file exceptions to the said account . . . [in] the said Orphans' Court and to further claim divers surcharges against . . . [the bank-executor]; . . . And whereas it is the common desire and wish of all of the parties . . . [including the heirs] to amicably settle, adjust and dispose of all differences, claims and contentions among them, and to effect an early distribution of said Estate." Howell and Katz then each engaged to pay $7,333.33 to the executors and to deliver to the executors certain named securities.

The heirs agreed not to file exceptions to the first and partial account.[3] They effected a partial surcharge of the executors by depriving them of any commissions

---

[2] Mrs. Lewis, as an executrix with the bank, was made a fourth party.

[3] "7. Parties of the first part will not file any exceptions or objections to the First and Partial Account heretofore filed."

on the additional assets.[4] The executors were required to file immediately a second and final account showing the additional assets and to secure confirmation of both accounts by the orphans' court;[5] and on confirmation were required to make immediate distribution [6] (the additional securities to be distributed in kind). It was impossible not to understand that a supplemental inventory for federal and state inheritance tax purposes would have to be prepared and filed and additional tax and penalties be paid; and likewise that an attorney would have to draw these papers and the account and secure its confirmation by the orphans' court.

Not only did the preamble of the agreement recite that it was "the common desire and wish of all of the parties . . . to amicably settle, adjust and dispose of *all* differences, claims and contentions among them . . ." (emphasis supplied), but in addition that the heirs would "release, acquit and forever discharge . . . [the bank, individually and as executor] . . . and [Howell and Katz] . . . from all . . . claims, debts, defaults, surcharges, or the like, which . . . they have or . . . had . . . *arising from, out of, or in connection with said*

---

[4] "5. Parties of the second and fourth parts shall receive and keep all commissions received by them or either of them or charged in the said First and Partial Account, but shall not charge or receive any further or additional commissions against the said Estate in the Second and Final Account to be filed."

[5] "6. As soon as possible hereafter parties of the second and fourth parts shall file a Second and Final Account of the administration of said Estate setting forth the receipt of the moneys provided for under paragraphs 1 and 2 hereof and the securities hereinbefore mentioned, to wit: 100 shares D.L. & W. stock and 100 shares Commonwealth and Southern stock, and shall request confirmation of both of the said accounts by the Orphans' Court."

[6] "9. Upon absolute confirmation of the said accounts, parties of the second and fourth parts will distribute and pay out to the parties of the first part their proportionate shares of the balances shown by the said accounts and parties of the first part coincidentally therewith will execute and deliver their joint and several receipts and acquittance therefor and their joint and several written consents to their discharges by the Court from their duties as such executors."

*stock and business transactions heretofore mentioned."*
(Emphasis supplied). Thus the bank was released from
any surcharge, claim, or requirement to pay anything
*as to any matter concerning the discovery or acquisition
of the additional assets.*

The first item of the present attempted surcharge is
a $300 attorney fee for the executors' attorney in doing
the additional work which the agreement commanded
should be done, to wit, the petition to withhold con-
firmation of the first and partial account; the prepara-
tion of the second and final account; the supplemental
appraisement of additional assets and the settlement and
payment of additional inheritance taxes and penalties.
If the attempted surcharge was on the ground that the
fee was too large, or that the work was unnecessary to
be done under the agreement, a different situation would
arise. But at the audit the heirs stated: ". . . we are
willing to stipulate that . . . [the] charge of $300.00
[by the attorney for the estate] . . . is a fair and rea-
sonable charge, making the question for the Auditor . . .
only . . . by whom this charge should be paid." Thus
it was conceded that this attorney's fee was fairly earned.
It was therefore required to be paid. It was payable out
of the assets of the estate unless, and only unless, the
charge could properly be placed on someone else. Here
the attempt is made to place it on the bank. The evidence
and arguments why the bank, rather than the estate,
should pay this fee are only that the bank's conduct in
not moving to obtain the additional assets caused the
additional services of the attorney to become necessary.
This is an effort to surcharge the bank for something
"arising from, out of, or in connection with said stock
and business transactions heretofore mentioned . . .,"
which the heirs solemnly engaged not to do. If the heirs
desired to protect the estate or themselves from any
further costs, fees or expenses, they could have so stip-
ulated, but they did not. The present proceedings did
not attempt to deprive the attorney of the fee, but to

transfer the liability therefor from the estate to the bank, in direct violation of the covenant of the heirs.

The further attempted surcharge is for state and federal tax penalties of $79.41. These penalties directly grow out of the same stock and business transactions, and are covered by the same release.

The appellants are here seeking to obtain a small monetary advantage which they engaged not to attain.

Decree affirmed, the costs to be paid by appellant.